**NORTH PHILADELPHIA COMMUNITY BOARD, an unincorporated association, by Wesley Frazier and Ronald McCoy, Trustees Ad Litem, et al., Plaintiffs,**

v.

**TEMPLE UNIVERSITY OF the COMMONWEALTH SYSTEM OF HIGHER EDUCATION, a Pennsylvania non-profit corporation, et al., Defendants.**

Civ. A. No. 70-2162.

United States District Court,
E. D. Pennsylvania.

June 30, 1971.

**1108**

John David Stoner, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Victor L. Schwartz, Asst. U. S. Atty., Philadelphia, Pa., for federal defendants.

Isador Kranzel, Asst. City Sol., Philadelphia, Pa., for municipal defendants.

Joffrey Conn, Asst. Atty. Gen., for Dept. of Public Welfare of Commonwealth of Pa., Stanley A. Miller and Joseph Adelstein, M. D.

Peter Platten, C. Oliver Burt, III, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Temple University

of the Commonwealth System of Higher Education and Temple University Health Sciences Center.

## OPINION

JOHN MORGAN DAVIS, District Judge.

Plaintiffs, an unincorporated community association interested in local mental health programs, and individual residents of the North Philadelphia area, have brought this action for monetary, injunctive and declaratory relief against defendants. Plaintiffs seek to rectify alleged misconduct and irregularities in the operation and administration of the Temple Community Mental Health Center, Philadelphia, Pennsylvania (hereinafter referred to as the Center). Plaintiffs sue in their own right and as class representatives of others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Jurisdiction is claimed under 28 U.S.C. § 1331 (federal questions), 28 U.S.C. § 1361 (mandamus against federal officials), 28 U.S.C. § 2201 (declaratory judgments), 5 U.S.C. § 701 et seq. (Administrative Procedure Act),[1] and 28 U.S.C. § 1343 (Civil Rights).

The individual defendants are federal, state, county and Temple University officials charged with administering and supervising local mental health programs. The agencies and organizations which the individual defendants head, are also named defendants.

The defendants have filed motions to dismiss on the following grounds: lack of jurisdictional amount; lack of subject matter jurisdiction, Fed.Rule 12(b) (1); failure to state a claim upon which relief can be granted, Fed.Rule 12(b) (6); compliance with statute; administrative discretion; impropriety of the use of the writ of mandamus to compel a federal official to perform discretionary duties; and inability of the Court to fashion a remedy which would compel

---

I. The APA provides, "A person suffering legal wrong because of agency action, or adversely affected by agency action with- in the meaning of a relevant statute, is entitled to judicial review thereof." (5 U.S.C. § 702)

the defendants to do or refrain from doing any act. The County defendant's memorandum of law raises the issue of plaintiffs' lack of standing. In the alternative, defendants request summary judgment in their favor, Fed.Rule 56.

For the reasons stated below, plaintiffs' complaint is dismissed without prejudice so they may await the outcome of present agency investigations.

## BACKGROUND

The United States Community Mental Health Centers Act, as amended (Title 42 U.S.C. § 2681 et seq.) (hereinafter referred to as the federal act), authorizes the Secretary of the Department of Health, Education and Welfare to make regulations and monetary grants for the establishment of community mental health centers. The Secretary promulgated the necessary regulations and they are enumerated in 42 C.F.R. 54.201, et seq. A state desiring federal funds must submit a state plan complying with the provisions of the federal act. 42 U.S.C. § 2684; 42 C.F.R. 54.202–212.

Under the terms of the federal act, the Secretary is to insure that the mental health centers are operated in accordance with the federal regulations. He is to receive periodic reports as to the administration of the centers, and is authorized to withhold funds if, after reasonable notice and opportunity for hearing to the appropriate State agency, he finds the State agency is not substantially complying with the provisions of the federal act, 42 U.S.C. § 2686.

Under the Pennsylvania Health and Retardation Act of 1966, the Department of Public Welfare, and County Mental Health and Retardation Board, are charged with the responsibility of administering county mental health programs and insuring that necessary services are available (50 Purdons P.S. §§ 4201, 4301–4305).

Temple University applied for and received funds to establish a community mental health center under the auspices of its Health Sciences Center. Plaintiffs contend that Temple University has failed to operate the Center in accordance with federal and state requirements. Plaintiffs further allege that the federal, state and county defendants have permitted this misconduct to continue. Plaintiffs specifically allege that Temple has: (1). misappropriated funds through payment of salaries to persons who have done little or no work for the Center, (2). interfered with the operation of the Center through occupation of some of the Center's buildings by Temple guards, refusal to permit members of the community to enter the buildings, termination of the education and consultation section and firing of some staff personnel, (3). failed to give the community a voice in the Center's planning, operation and administration, (4). violated plaintiffs' civil rights by failure to provide the kind of mental health services available in predominantly white communities, (5). failed to recognize and provide for the specific mental health needs of the black community in which the Center operates.

Plaintiffs seek the following specific relief: (1). injunction to prevent Temple from interfering with the Center's operations, (2). declaration that the federal act must be applied in accordance with the needs of the communities in which the local centers operate, (3). declaration that the control of the center rests with the community (in particular with plaintiff association), (4). reinstatement of the consultation and educational unit, (5). reinstatement with full back pay of all staff whose services were terminated by Temple, (6). declaration that the consultation and educational units were never legally terminated. (7). Order that Temple pay a sum of money equal to that intended for the Center's use and misappropriated by Temple.

In their answer, the Temple defendants have stated that (1). They are basically complying with the act. (2). The interference of which plaintiffs complain was instituted only as the result of disturbances in the form of sit-ins which occurred in the Spring and Summer of 1970, and as the disturbances have stop-

ped, Temple's interference has ceased. (3). The federal and state officials are charged with the responsibility of overseeing the Center.

## MOTION TO DISMISS.

■ It is well settled that a court should not interfere with the operation of a program administered by a federal agency unless exceptional circumstances exist. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). These exceptional circumstances include: an agency's failure to follow its own procedure, Shannon v. United States Department of Housing and Urban Development, 436 F.2d 809 (C.A.3rd Cir., 1970); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); abuse of discretion, prima facie illegality of agency actions, Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561 (1970); Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App. D.C. 371, 424 F.2d 859 (1970); unlawful or unreasonable delay, International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. National Mediation Board, 138 U.S.App.D.C. 96, 425 F.2d 527 (1970); action taken in excess of agency powers, Curran v. Laird, 136 U.S.App.D.C. 280, 420 F.2d 122 (1969); inadequacy of administrative remedies, Nemitz v. Norfolk & W. Ry. Co., 287 F. Supp. 221 (D.C.Ohio, 1968); and exhaustion of administrative remedies.

Jackson v. State of Colorado, 294 F.Supp. 1065 (D.C.Colo., 1968).

This Court finds none of these exceptional circumstances here, nor does this Court find present any of the circumstances which will permit review under the Administrative Procedure Act.[2]

There are administrative remedies available for vindication of any Civil Rights of which plaintiffs feel deprived. Under the rules promulgated by the Secretary of HEW under his authority as conferred by section 2684 of the federal Act, Section 601 of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d is made applicable to federally assisted medical programs. (42 C.F.R. 54.408)[3].

Administrative remedies are provided in 45 C.F.R. 80 et seq. Appendix A to that Part makes the procedures applicable to grants to states for community mental health centers construction (Community Mental Health Centers Act, 42 U.S.C. §§ 2681–2688).

Part 80 of Title 45 provides that its purpose is "* * * to effectuate the provisions of Title VI of the Civil Rights Act of 1964 * * *" 45 C.F.R. 80.1.

The community in which the Center operates is predominantly black. Plaintiffs allege that the mental health services provided by the Center are deficient in that they are inadequate when compared to services offered in predominantly white communities, plaintiffs contend that they and the community they

2. "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determining the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) Compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity. * * *

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. * * *"
5 U.S.C. § 706

3. "Sec. 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, provides that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * * The regional medical programs provide Federal financial assistance subject to the Civil Rights Act and the regulations * * *" 42 C.F.R. 54.408.

represent are denied their civil rights by such action.

The actions complained of by plaintiffs are specifically prohibited by Part 80 of Title 45, C.F.R.[4] Any person who believes that he has been subjected to discrimination prohibited by law, may file a complaint with the responsible Department official. 45 C.F.R. 80.7(b). The complaint must be filed not later than 90 days from the date of the alleged discrimination unless the time for filing is extended by the responsible Department official. This Court believes that the 90 day limitation should not preclude plaintiffs from filing a complaint. If Temple University is engaging in discrimination the injury is a continuing one which would give rise to a complaint each time a service is rendered by the Center.

When plaintiffs have availed themselves of the complaint procedure, the Department of HEW is authorized to conduct an investigation and, if necessary, conduct a hearing, 45 C.F.R. 80.7–80.10. The final agency decision is then subject to judicial review, 45 C.F.R. 80.11.

■■ We find none of the extraordinary circumstances which will permit judicial action in the absence of final agency action. Judicial intervention in the absence of exhaustion of administrative remedies is for the discretion of the courts. N. L. R. B. v. Industrial Union of Marine and Shipbuilding Workers of America, A.F.L.–C.I.O., Local 22, 391

U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

Plaintiffs have alleged that the federal and state defendants have permitted the Center to operate in violation of the federal regulations and in such a way as to deprive plaintiffs of their civil rights. This Court is unconvinced by this allegation. Representatives of the Department of HEW, and state and county health officials, have made an on-site inspection of the Center. A Report filed by the HEW Acting Associate Regional Health Director for Mental Health on November 16, 1970, stated that the five basic elements of the federal program were being met.[5]

The Report, while finding that the basic requirements were met, also found deficiencies in the administration and operation of the Center. Included in those deficiencies were some of those complained of by plaintiffs, for example, lack of communication between the Center's administrators and the community, lack of organization with respect to staffing and accounting procedures, and failure to make community consultation and education the core of the Center's service. The reviewing task force, composed of experts in mental health and management fields, made recommendations for improvement and informed Temple that it should submit a plan for corrective action plus a timetable for implementation. The task force placed the staff of HEW and the National Institute of Mental Health at the disposal of the Center to assist in planning.

4. "Discrimination prohibited * * * (b) specific discriminatory actions prohibited. (1) A recipient under any program to which this part applies may not, directly or through contractual or other arrangements, on grounds of race, color or national origin,

   *     *     *     *     *

(ii). Provide any service, financial aid, or other benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program;

   *     *     *     *     *

(iv). Restrict an individual in any way in the enjoyment of an advantage

or privilege enjoyed by others receiving any service, financial aid, or other benefit under the program * * *" 45 C.F.R. 80.3.

5. The five essential elements of the mental health program are: 1. Inpatient services; 2. Outpatient services; 3. Partial hospitalization services; 4. Emergency services provided 24 hours per day; 5. Consultation and education services available to community agencies and professional personnel. 42 C.F.R. 54.212.

■ This Court finds that HEW is aware of the deficiencies in the Center and the need for improvement. This Court further finds that the Department is taking steps to rectify the deficiencies by informal means. These findings lead the Court to conclude that the federal, state and county authorities are not insensitive to the interests of the community in seeking a well operated community mental health center, nor are they permitting any violations of the federal act. Plaintiffs contend that these authorities did not begin their investigation until after plaintiffs' complaint was filed. That statement does not alter the fact that the administrative procedures have been set in motion.

The task force found basic compliance with minimum statutory requirements. Their findings were discretionary, and this Court finds no abuse of discretion which would give rise to judicial review under the Administrative Procedure Act, or the use of the extraordinary writ of mandamus.

Plaintiffs request that this Court declare that the federal Act must be applied in communities containing minority groups in ways which meet the mental health needs of such groups, and that this requires control by such groups. We stated above that the federal, state and county defendants are aware that the Center must meet the needs of the community. If plaintiffs feel they are denied certain benefits, their remedy is 45 C.F.R. 80.1, et seq.

■ Furthermore, while community participation is needed to assure that the Center meets the needs of the community in which it operates,[6] this Court finds nothing in the federal, state or county programs which requires community control of community mental health centers. Any declaration of community control would be legislation on the part of this Court, and such action is not within its power. Nor do we know why we should vest control in this particular organization, The North Philadelphia Community Board, rather than any other community group.

The task force report also alluded to plaintiff association's desire to be given control of the Center. HEW and Temple are aware of this desire, and, as stated in the report of November 16, 1970, inquiries are taking place on this matter.

■ The circumstances in the case at bar are not conducive to judicial intervention at this time. The administrative procedures should be allowed to run their full course before recourse is had to the courts. It is "generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages." McKart v. United States, supra, 395 U.S., at 194, 89 S.Ct., at 1663.

■ Finally, plaintiffs lack standing to complain of and seek relief for any termination of services of staff personnel by Temple. Plaintiffs have failed to allege that any of them are members of that group whose services have been terminated. Plaintiffs lack the requisite directness of interest to seek the aid of the courts and confer jurisdiction upon them. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Assoc. of Data Processing Service Organizations, Inc. et al. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The present case is clearly distinguishable from the case cited by plaintiffs in which individuals were allowed standing to challenge discrimination in employment practices in Alabama state mental institutions. Marable v. Alabama Mental Health Board, et al., 297 F.Supp. 291 (D.

---

6. " * * * Community based and coordinated with all other community resources, the center offers the greatest hope for the care, treatment and rehabilitation of the mentally ill."
" * * * The center can * * * provide a means of lessening the barriers between the community and the hospital. The hospital staff can join with community groups in planning and providing services in the community mental health center * * * " United States Senate Report No. 366 of June 24, 1965 to accompany H.R. 2985 8th Cong. 1st Sess.

C.1969). In that case Alabama officials were guilty of discrimination in hiring. In the case at bar, there is no allegation of discrimination in hiring, nor is there an allegation of discrimination in firing. There is only the allegation that the services of some staff personnel were terminated by Temple.

In conclusion, we hold that (1). plaintiffs have adequate administrative remedies available for redress of any denial of their civil rights, (2). the federal, state and county defendants are engaged in an administrative investigation of the Center and the Court would abuse its discretion if it interfered with the administrative procedures, (3). there has been no abuse of discretion for which mandamus will lie, (4). plaintiffs lack standing to complain of any misconduct in firing of Center personnel, (5). this court may not direct community control of the Center, for the Court cannot usurp the legislative prerogative.