**Winton JACKSON, Plaintiff,**

v.

**STATE OF COLORADO, Ground Water Commission of the State of Colorado, A. Ralph Owens, individually and as State Engineer of the State of Colorado, and North Kiowa Bijou Management District, Defendants.**

**Civ. A. No. C-871.**

United States District Court
D. Colorado.

Oct. 3, 1968.

Saunders, Dickson, Snyder & Ross, by John M. Dickson, Denver, Colo., for plaintiff.

Duke W. Dunbar, Atty. Gen., for the State of Colorado, Frank E. Hickey, Deputy Atty. Gen., and Ben L. Wright, Jr., Special Asst. Atty. Gen., Denver, Colo., for defendants State of Colorado, Ground Water Commission of the State of Colorado, and A. Ralph Owens, individually and as State Engineer of the State of Colorado.

George A. Epperson, Donald F. Mc-Clary and Stanley I. Rosener, Fort Morgan, Colo., for defendant North Kiowa Bijou Management District.

Before HICKEY, Circuit Judge, and ARRAJ and PAYNE, Judges.

ARRAJ, District Judge.

## MEMORANDUM OPINION AND ORDER

Plaintiff has invoked the jurisdiction of a three-judge court under 28 U.S.C. §§ 2281 and 2284 seeking a permanent injunction restraining an action by an administrative board, acting under a Colorado state statute, contending that the statute and regulation promulgated thereunder are unconstitutional in that they violate the provisions of the Fourteenth Amendment by permitting the taking of plaintiff's property without just compensation and without due process of law.

Defendant North Kiowa Bijou Management District has moved to dismiss the action on the grounds that plaintiff failed to exhaust his administrative remedies and consequently failed to bring himself within the jurisdiction of this Court.

The other defendants have moved to dismiss the action on the following grounds:

1. Article III, Section 2, of the Constitution of the United States, does not give this Court jurisdiction over a suit by a citizen of one state against another sovereign state. The Eleventh Amendment to the Constitution of the United States by its terms prohibits such suit.

2. The complaint fails to state a cause of action against the State of Colorado, Ground Water Commission of the State of Colorado, or A. Ralph Owens, either individually or as State Engineer of the State of Colorado.

3. Plaintiff has failed to join indispensable parties.

Movants have filed briefs supporting their motions and plaintiff has filed a brief responding to the briefs of all defendants. In plaintiff's brief he states that he is not seeking relief against the state of Colorado and therefore has no objection to its being dismissed as a party.

We will deal with the pending motions in two parts. The first part will determine the question whether plaintiff has failed to bring himself within the jurisdiction of this Court for failure to exhaust his administrative remedies. The second part decides whether the Eleventh Amendment bars this action and whether all the water users within the water district in question are indispensable parties. Initially, however, we will briefly discuss the statute in question.

In 1965, the Colorado legislature passed the "Colorado Ground Water Management Act" (hereinafter referred to as the Act) in an attempt to permit the full development of ground water sources, protect owners of surface water rights and alleviate the growing friction between the surface water appropriators and the well owners. Colo.Rev.Stat.Ann. § 148–18–1 (Supp. 1965). The Act separates certain water which it terms as "designated ground water" from the system of appropriation for surface waters, and it creates a permit system for the allocation and use of ground waters within the designated ground water basins. Colo.Rev.Stat.Ann. §§ 148–18–1 to 38 (Supp. 1965). Appropriators of the designated ground waters are required to obtain a permit for their appropriations and the Act establishes a system of prior appropriation, similar in operation to the system regulating surface water rights, to regulate the water rights of the ground water users. Colo.Rev.Stat.Ann. §§ 148–18–6 to 8 (Supp. 1965).

The administration and enforcement of the Act is placed in the hands of an administrative commission, the state engineer and locally formed ground water management districts. No discussion of the state engineer's powers is necessary as they are not pertinent to the issues herein presented. The commission is empowered to designate the ground water basins and to supervise and control the administration of all ground water so designated. It also grants or denies petitions for the formation of management districts within each ground water basin. The management district, on the other hand, is a corporate government subdivision of the State of Colorado which is formed for the purpose of assisting the commission on all matters affecting the district area, which include enforcing commission regulations, providing data on underground aquifers within the area, determining if commission regulations are suitable for the area, and helping conserve the ground water for maximum beneficial use. The management district has general authority to regulate the use, control and conservation within the district and specific authority, *inter alia*, to prohibit the use of ground water outside the boundaries of the district where such use would materially affect the rights of other

permit owners within the district. Colo. Rev.Stat.Ann. §§ 148–18–10, –23, –29 (Supp. 1965).

With respect to issuing permits and promulgating regulations the Act makes available to affected water users the procedures providing for notice, hearing and review of the commission and the management district measures. Sections 29 and 30 of the Act provide that the proposed controls, regulations, or conservation measures of the management districts are subject to *review* and *final approval* by the ground water commission *if objection* is made within thirty days after the publication of the corrective measure. Colo.Rev.Stat.Ann. 148–18–29, –30 (Supp. 1965). The consequence of lodging a timely objection to a management district's proposed measure is to defer finality of the administrative process and allow for change and correction within the administrative agency should such be needed. Section 14 provides that any person dissatisfied with any decision of the commission may take an appeal to the appropriate district court and those proceedings shall be de novo. Colo.Rev.Stat.Ann. § 148–18–14 (Supp. 1965). Should a person take a timely appeal even after the commission's review and approval of a management district's proposed corrective measure, the measure would remain inoperative and without legal effect until the court should approve it. Reflection upon this elaborate reviewing scheme makes it clear that the legislature intended to allow for the full development of issues and interests and their cautious scrutiny by both the agency and state judiciary before a decision or regulation would become operative upon persons having such a vital interest affected as the use and appropriation of water.

## I.

Plaintiff is an owner of a conditional permit to drill a water well within the North Kiowa Bijou Management District, Kiowa-Bijou Ground Water Basin. He is also an owner of an option to acquire certain other appropriations of well water within the North Kiowa Bijou Management District. He intends to use the water yielded by the wells for municipal purposes in the Denver metropolitan area outside the boundaries of the North Kiowa Management District.

At some time prior to the commencement of this suit, the North Kiowa Management District adopted the following regulation:

[i]t is prohibited to use or transport ground water obtained within the District outside the boundaries of the District.

Plaintiff contends specifically that the regulation and Act deprive him of vested property rights without just compensation in violation of the due process clause of the Fourteenth Amendment and Section 14 of Article II of the Constitution of the State of Colorado. He also claims that the regulation and Act have a retrospective effect upon plaintiff's water rights in violation of Section 11 of Article II and Section 12 of Article XV of the Constitution of the State of Colorado. Finally, he claims that the Act violates Articles III and V, Section 1 of the Constitution of the State of Colorado in that it vests legislative power in the Management District without any standards to guide the exercise of this power. Plaintiff premises his claims on the fact that the regulation prohibits exportation even where such does not injure senior appropriators and that his project would not materially affect the permit rights of the other water users within the District.

Plaintiff's challenge, however, is premature because he has failed to exhaust his administrative remedies. Prior to the commencement of this suit, plaintiff had invoked the review procedures of the Act by filing a timely objection to the District's proposed regulation prohibiting the export of ground water outside the District. The commission had resolved to hold a hearing to review the issues raised by plaintiff. This action, however, was filed prior to the date set for hearing and the pleadings reflect that no hearing was held, nor any final determination reached

with respect to the proposed correction measure prior to the commencement of the suit.

■■ In concluding that plaintiff's challenge is premature, we adhere to the general rule that in deference to the expertise of administrative agencies and in an attempt to avoid premature review of incomplete regulations and orders, no person is entitled to judicial relief for threatening injury until he has exhausted his prescribed administrative remedies. FCC v. Schreiber, 381 U.S. 279, 296–297, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1964); Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The Act before us prescribes review and final approval within the administrative process and it is significant that the commission's authority with respect to the Management District's proposed measure is not limited to appellate review but involves the commission's rule-making power. In effect all Management District regulations objected to by interested persons become commission regulations upon approval. With final approval pending then, no obligation nor fixing of civil or criminal liability has been imposed on the plaintiff as a consummation of the administrative process. See Toilet Goods Ass'n v. Gardner, 360 F.2d 677 (2nd Cir. 1966), aff'd 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed. 2d 697 (1967). Courts are ill disposed to pass on the constitutionality of a regulation which may never be established or significantly altered to present different issues or render court review unnecessary. Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954); Sohm v. Fowler, 124 U.S. App.D.C. 382, 365 F.2d 915 (1966); Allegheny Airlines, Inc. v. Fowler, 261 F. Supp. 508 (S.D.N.Y.1966).

■ The Supreme Court recently expressed itself with respect to the exhaustion of administrative remedies in a per curiam order by stating that:

[i]t is evident that Congress has provided a way for appellants to raise their constitutional claims. But appellants, denying that they are within the coverage of the Act, wish to litigate these claims in an injunctive proceeding in the District Court. The effect would be that important and difficult constitutional issues would be decided devoid of factual context and before it was clear that appellants were covered by the Act. Du Bois Clubs of America v. Clark, 389 U.S. 309, 88 S. Ct. 450, 19 L.Ed.2d 546.

Plaintiff's failure to exhaust his administrative remedies goes to the very jurisdiction of this Court, since we view the exhaustion requirement under the present facts as prerequisite to invoking our jurisdiction. See Smith v. Board of Comm'rs of District of Columbia, 127 U.S.App.D.C. 85, 380 F.2d 632 (1967); United States v. Bradt, 280 F.Supp. 858 (C.D.Cal.1968); Hills v. Eisenhart, 156 F.Supp. 902 (N.D.Cal.1957), aff'd 256 F.2d 609 (9th Cir. 1958), cert. denied 358 U.S. 832, 79 S.Ct. 53, 3 L.Ed.2d 70 (1958). Indeed, plaintiff's failure to exhaust his administrative remedy leaves this Court without a record established by the agency, without a finalized regulation, and without certainty that the plaintiff is covered by the regulation. We are satisfied that the issues raised by the plaintiff are not sufficiently immediate, adverse, or concrete for judicial review. See Zwickler v. Koota, 389 U.S. 241, 245 n. 3, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Only plaintiff's pursual of the available administrative remedies will develop a justiciable controversy.

■■ In plaintiff's brief he admits that he has failed to exhaust his administrative remedies. He asserts, however, that to do so would be futile. In support for this argument, plaintiff speculates that should the reviewing commission find the proposed measure invalid, the Management District could still propose the same measure at another time and the commission then approve it. He contends that the commission's change of mind is possible because the Act provides no standards by which the commission must abide. We do not choose

to indulge in such speculation. We recognize that the requirement of exhaustion does not preclude judicial review where to pursue the prescribed administrative process would be futile. Futility, however, presumes that finality is sufficiently imminent, City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934), or that the administrative process is inadequate to pursue a remedy, Dermott Special School Dist. of Chicot County v. Gardner, 278 F.Supp. 687 (D.Ark.1968). Both presumptions are lacking in the instant case.

The mere speculation urged by the plaintiff has no apparent basis upon any prior decisions of the commission or any present attitude of the commission with respect to the proposed measure so as to suggest the imminent finality of that regulation. Plaintiff also fails to satisfy the Court that the commission's review of the measure will be inadequate to develop plaintiff's interest and protect his rights. Indeed the doctrine of exhaustion requires the pursual of the administrative process to completion to allow the administrative agency opportunity for correction. United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Spanish Int'l Broadcasting Co. v. FCC, 128 U.S.App. D.C. 93, 385 F.2d 615 (1967). Should the commission's review be inadequate, plaintiff is given a statutory right to an appeal de novo in the state courts. Colo. Rev.Stat.Ann. § 148–18–14 (Supp. 1965). Plaintiff's constitutional rights should be fully protected by the procedures made available by the Act and this Court cannot presume otherwise. See Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

Plaintiff's constitutional challenges at this stage of the administrative process is an attempt to have this Court prejudge issues which had been initially committed to an administrative agency by the Colorado legislature. Absent a serious constitutional threat, we do not think it proper for a federal court to disrupt the orderly state administrative process by pre-empting its decision making process. We have not found any serious constitutional threat to have evolved to sufficient maturity and completeness to warrant our taking jurisdiction over this suit. Defendant North Kiowa Management District's motion to dismiss on grounds that plaintiff has failed to exhaust his administrative remedies is therefore granted.

## II.

A. In their brief in support of their motion to dismiss, the commission and the state engineer raise two further grounds. One, the Eleventh Amendment prohibits this suit; and two, all water users within the district are indispensable parties to the action and failure to include them as defendants precludes the jurisdiction of this Court. We find these contentions without merit.

Early in the history of this Amendment the Court established that federal courts had authority to restrain a state officer empowered to enforce a state statute, which when executed had the effect of denying a complainant the rights and privileges guaranteed him by the United States Constitution. Osborn v. President, etc., of Bank of United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). Later in the landmark case of Ex Parte Young, the Supreme Court, in a suit brought to enjoin a state attorney general from enforcing an administrative regulation which allegedly denied the plaintiff due process under the Fourteenth Amendment, created the fiction that even though the Fourteenth Amendment required state action, a suit to restrain the officer authorized to enforce the alleged unconstitutional regulation was against the individual and not the state, and therefore not barred by the Eleventh Amendment. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); see McGuire v. Sadler, 337 F.2d 902, 906 (5th Cir. 1964). Ex Parte Young was affirmed in Georgia R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952), when

the court reiterated that "[t]he State is free to carry out its functions without judicial interference directed at the sovereign or its agents, but this immunity from federal jurisdiction does not extend to individuals who act as officers without constitutional authority." 342 U.S. at 305–306, 72 S.Ct. at 325.

In resolving whether or not a suit is truly against the state and consequently barred by the Eleventh Amendment, a federal court must decide whether or not the named state officials are truly the real parties in interest or only nominal parties in an action in which the state will bear the full impact of the judgment. The test recognized by the Tenth Circuit is that stated in Ford Motor Co. v. Dept. of Treasury of Indiana, 323 U.S. 459 at 464, 65 S.Ct. 347, at 350, 89 L.Ed. 389:

> [w]e have previously held that the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding. * * * And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. See Hamilton Mfg. Co. v. Trustees of State Colleges in Colorado, 356 F.2d 599, 601 (10th Cir. 1966).

The suit before us clearly does not fall within the above test, since it is not one for the recovery of money. Indeed even under the broader test created in Ex Parte Young the Eleventh Amendment does not bar this action. There it was stated that:

> * * * individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of

equity from such action. * * * In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party. 209 U.S. at 155–157, 28 S.Ct. at 452.

Both the commission and state engineer have enforcement authority of the regulations established under the Act. Colo. Rev.Stat.Ann. § 148–18–9, –10 (Supp. 1965). We are satisfied that the commission and state engineer are the real and substantial parties within the purview of Ex Parte Young and Ford Motor Co. and consequently the suit is not against the state and therefore not barred by the Eleventh Amendment.

B. Defendants rely on Comstock v. Larimer & Weld Reservoir Co., 58 Colo. 186, 145 P. 700 (1914), to support their contention that plaintiff has failed to join indispensable parties in this action. Comstock is not factually analogous. There the plaintiff sought relief which was in essence a court decree determining what season water appropriators could divert water for direct irrigation and what season they could divert only for storage. The relief claimed would have materially and adversely altered existing legal rights thereby affecting the direct irrigation appropriators by denying their right to divert any of their yearly quota during the season set aside for storage. The court held that the direct irrigators were indispensable parties in that no decree could be entered in favor of the plaintiff without taking away or limiting the decreed appropriative water rights of the other appropriators within the Division.

The action before us does not present the Comstock situation; a decree could be entered in favor of or against the plaintiff without increasing or decreasing the decreed surface water rights or injuring the well owners' constitutional rights to appropriate water

and apply it to a beneficial use. A decision for or against the plaintiff might indirectly affect the interests of all water users, but could not alter vested legal rights so as to raise the water users to the status of indispensable parties. In reaching this conclusion, we have considered the principles for determining indispensability as set forth in Shields v. Barrow, 58 U.S. (17 How.) 129, 139, 15 L.Ed. 158 (1854), and in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 124–125, 88 S.Ct. 733, 19 L.Ed.2d 936 (1967). We believe the practical considerations and the absence of legal prejudice preclude a finding that all water users are indispensable parties and the movants have not provided us with reasoning to the contrary. Accordingly it is

Ordered that defendants' motion to dismiss based upon plaintiff's failure to exhaust his administrative remedies be and hereby is granted.