Fred **KOEHLER**, individually, **America's Society of Divorced Men, Inc.,** a not for profit Corporation, and all of its **Illinois** members, and for all married men in the State of **Illinois, Plaintiffs,**

v.

Richard **OGILVIE,** Governor of the State of **Illinois, et al., Defendants.**

No. 70 C 3099.

United States District Court, N. D. Illinois, E. D.

July 29, 1971.

Judgment Affirmed Feb. 22, 1972. See 92 S.Ct. 938.

---

Peter Bianco, Jr., Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen. of Ill., Edward V. Hanrahan, Cook County State's Atty., Chicago, Ill., for defendants.

Before STEVENS, Circuit Judge, and McGARR and WILL, District Judges.

OPINION

WILL, District Judge.

The plaintiffs in this suit attack the constitutionality of the divorce laws of the State of Illinois. They contend that certain aspects of these laws are so vague

on their face as to be unconstitutional and that other provisions, albeit fair on their face, are applied by the "public authority" with an unequal hand so as to violate the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs, Koehler and America's Society of Divorced Men, Inc., sue individually, as representatives of all Illinois members of the corporate plaintiff, and as representatives of the class of all married men in the State of Illinois. The plaintiffs seek a declaration that certain of these statutes are unconstitutional and an injunction restraining the defendants from enforcing them and the remainder of the laws in the manner in which they allegedly have been applied in the past. All defendants have moved for dismissal of the complaint upon varying grounds. Pursuant to the mandate of Section 2281 of Title 28 of the United States Code, this three-judge court was convened. Its first task is to rule upon these motions.

The issues presented to this Court by the defendants' motions to dismiss are (1) whether this suit may be maintained as a class action; (2) whether suit has been brought against the proper defendants; and (3) whether abstention would be appropriate in this particular proceeding.

I

■ The initial issue presented is whether this suit may be maintained as a class action. The proposed plaintiff class appears to consist of numerous divorced men who are members of the corporate plaintiff plus all the married and divorced men in the State of Illinois. As the complaint is framed, it could include all male residents of Illinois regardless of their present marital status. A class action so identified is obviously impracticable and may not be maintained.

Two of the crucial requisites for class actions are that the claims of the representative parties be typical of the claims of the class as a whole and that the representative parties will fairly and adequately protect the interests of the class. Rule 23(a) (3) and (4), Fed.R.Civ.P. The (a) (3) requirement that the claims be typical has been equated with the (a) (4) requirement that the representative party or parties must adequately represent the class and/or with one of the constituent elements of the adequacy requirement, that the interests of the representative party must be co-extensive with the interests of the other members of the class. *See, e. g.*, Burstein v. Slote, 12 FR Serv.2d 23c. 1, Case 2 (S.D. N.Y.1968); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); *see, generally,* 3B Moore's Federal Practice ¶¶ 23.06–2, 23.07. Because the federal courts have apparently met with some difficulty in fully delineating and separately identifying these two requirements and becaue no compelling reason appears in this litigation which necessitates such a delineation, we will consider these two requirements together in the context of this proceedings.

■ The plaintiffs attempt to represent both men who have been divorced and those who may potentially face such action in the future, with the latter group appearing to be the great majority of the class. It is obvious that many of the currently married and unmarried men of Illinois will never sustain any contact whatsoever with the state's divorce laws. They, therefore, have no case or controversy against any of the defendants and have claims, if any at all, of a totally different nature than do the class of men who have endured the allegedly discriminatory effect of the divorce laws in question. It is axiomatic that the interests of the named representatives in a class action must be co-extensive with the interests of the other members of the proposed class. Brotherhood of Locomotive Firemen & Enginemen v. Graham, 84 U.S.App.D.C. 67, 175 F.2d 802, 807 (1948); Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y.1968); Chafee, Some Problems of Equity 231

(1950). We conclude that various members of the proposed class do not have interests co-extensive with the named plaintiffs, that the claims of the named plaintiffs are not typical of those of the proposed class, and that, for these reasons, the suit is not properly maintainable as a class action.

■ Even apart from the above considerations, we have difficulty visualizing this suit as a proper class action. The plaintiffs name as defendants the Governor and Attorney General of Illinois, in addition to all the sheriffs and Circuit Court Clerks of the state. It is obvious that many of these defendants will fall into the plaintiffs' proposed class and in effect be placed in the position of suing themselves. It is clear, therefore, that the named plaintiffs have interests not wholly compatible with, but rather antagonistic to, those whom they would represent. This alone is enough to dismiss the suit as a class action. Hansberry v. Lee, 311 U.S. 32, 44–45, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Schy v. Susquehanna Corporation, 419 F.2d 1112, 1117 (7th Cir. 1970). We conclude, therefore, that this lawsuit in its present projection may not be maintained as a class action.

■ It is equally clear that the action would not meet the requirements of Rule 23 if the class was limited to all divorced men in the state. The interests of all divorced men are obviously not the same. For example, many divorced men are required by their decrees to pay alimony. Many others are not. Some have obligations to support their minor children, others do not. The visitation arrangements vary from case to case. Some decrees provide that the husband maintain insurance of which the wife is the beneficiary, others do not. Some divorced men are very dissatisfied with the decrees entered in their cases, others are not. The combinations and permutations are almost endless.

The incongruity of a class action here is dramatically apparent when its implications are considered as they relate to the relief sought. Plaintiffs would, in effect, have application of the divorce laws of Illinois and all decrees and orders entered pursuant thereto enjoined presumably until new statutes are enacted and new proceedings initiated thereunder. They seek this result in all cases, including those in which the ex-husband has no complaint about the manner in which the existing laws have operated in his case. The chaos which such a result would create is frightening to contemplate.

Finally, a class action is unnecessary to enable an appropriate examination of the constitutionality of the Illinois divorce laws since it can be as effectively achieved in an individual or joint action as in a class action.

## II

The second issue presented by defendants' motions to dismiss is whether the plaintiffs have sued the proper defendants for each of their claims and, if not, what effect such improper suit would have upon the plaintiffs' various claims. The thrust of the complaint is that numerous of the Illinois divorce laws, notwithstanding their facial constitutionality, are being applied in an unconstitutionally discriminatory manner for the reason that females nearly always fare substantially better in divorce proceedings than do males. Other allegations are made that certain of the divorce statutes, including some of those that are being applied unequally, are unconstitutionally vague on their face. We shall consider each of these claims separately.

■ As to the first, concerning unconstitutional application of laws fair on their face, an analysis of the paragraphs of the complaint relating thereto indicates that the plaintiffs' real grievance is against the manner in which the judges

of the Circuit Courts of the State of Illinois administer the divorce laws. None of the named defendants, however, being either state executive officials or para-judicial personnel, has any control over the actions of the Circuit Court judges nor has any of them apparently ever been involved with the allegedly unequal determinations made by the judges.

The relief requested by the plaintiffs in this group of claims is thus clearly inappropriate as to the named defendants. An order requiring the defendants to refrain from enforcing the Illinois divorce laws as they allegedly have been in the past would do absolutely nothing to change the alleged wrongs taking place in the state courts, for the defendants have no control over the state court judges and have taken no part in the alleged discrimination. What the plaintiffs are essentially complaining about is the conduct of the state judiciary. Whether or not they may be able to maintain an action against the members of the state judiciary, they clearly have not stated a cause of action against the defendants here as to the claims of improper application of state laws. Therefore, these aspects of the complaint must be dismissed.

■■■ On the other hand, it seems equally clear that we could not properly dismiss at this time those aspects of the complaint which allege facial unconstitutionality of the state divorce laws based upon the ground that suit has been brought against improper parties. The defendants contend that suit is improper against them as to all aspects of the complaint because of their official immunity. However, it has long been the law that officers of a state who are clothed with some duty in regard to the enforcement of the laws of the state and who threaten or are about to commence civil or criminal proceedings against parties affected by an unconstitutional state act may be enjoined by a federal court from such action notwithstanding the Eleventh Amendment. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Citizens Committee for Hudson Valley v. Volpe, 297 F.Supp. 809 (S.D.N.Y.1969).

The state officers named as defendants in such a suit must, however, have some connection with the enforcement of the questioned act, or else such naming merely makes those officers representatives of the state. In such case, the suit is considered as an attempt to render the state a party defendant in violation of the Eleventh Amendment. Jackson v. State of Colorado, 294 F.Supp. 1065, 1071–1072 (D.Colo.1968). At this point, we have no definitive idea of the relationship of these defendants to the enforcement of divorce decrees rendered pursuant to the allegedly unconstitutional statutes. Therefore, the improper naming of defendants is not an adequate ground for dismissing those limited aspects of the complaint alleging that the state divorce laws are "facially unconstitutional."

### III

■ We are left then with a suit by the individual and corporate plaintiffs against the named defendants alleging the facial unconstitutionality of certain of the Illinois divorce laws. The defendants ask us either to dismiss the complaint for failure to state a cause of action upon which relief could be granted, or to abstain from consideration of the action in the interests of federal-state comity. We need not reach the issue of whether the complaint states a cause of action since we conclude that we should dismiss this lawsuit upon the grounds of the doctrine of abstention. We would reach this result irrespective of whether we were dealing solely with the limited remaining portion of the complaint or

with the complaint in its entirety as originally drawn.

The doctrine of abstention has evolved over the years with numerous motivating considerations. Today, at least four reasons can be found that warrant a federal court in refusing to exercise the jurisdiction which clearly has been given to it. Abstention thus has been recognized: (1) to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law; (2) to avoid needless conflicts with the administration by a state of its own affairs; (3) to leave to the states the resolution of unsettled questions of state law; and (4) to ease the congestion of the federal court docket. Wright, Federal Courts, § 52. See, also, 1 Barron & Holtzoff, Federal Practice and Procedure, § 64. At least the first three grounds for the application of the abstention doctrine are present in this case.

Initially, we note that both the sole remaining aspect of the complaint—the alleged facial unconstitutionality of certain state laws—as well as the question of discriminatory application involves issues which might be resolved by the Illinois courts if this lawsuit were first presented to them. By abstaining, therefore, this Court will avoid unnecessary constitutional decision and unnecessary conflict with state courts, the original rationale for the doctrine of abstention as articulated by Justice Frankfurter in Railroad Commission v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Similarly, abstention may be appropriate not merely where state court determination of issues of state law may wholly avoid the constitutional questions presented to the federal court, but also where such determination may materially alter or substantially modify the presented constitutional questions. Railroad Commission, *supra*. It is apparent that the Illinois courts, if offered an opportunity to rule upon and construe the challenged laws, may render moot the entire constitutional issue presented herein or perhaps modify or alter these questions. Abstention, therefore, is clearly appropriate.

It is true that the Supreme Court has considered abstention to be inappropriate in certain circumstances even where the state courts have never been presented with an opportunity to construe a state law. *See, e. g.*, Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed. 2d 762 (1962). However, in cases such as *Turner*, the Court was presented with state statutes or action which *obviously* violated federal constitutional rights. Cf., Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). We cannot conclude, in the circumstances of this case, that the statutes which are challenged solely on the basis of being overly vague so *obviously* violate the due process clause that abstention would be improper under Turner v. City of Memphis, *supra*.

We note that civil rights cases have been no exception to the rule that abstention is proper where a prior state determination may materially alter or substantially modify the federal constitutional questions. *See*, Zwickler v. Koota, 389 U.S. 241, 245–252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Harrison v. N. A. A. C. P., 360 U.S. 167, 175–179, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Note, Federal Question Abstention, 80 Harv.L.Rev. 604, 618–619 (1967). We recognize, however, that during the last decade the Supreme Court has been restricting the application of the doctrine of abstention, particularly in cases involving fundamental constitutional rights. A primary reason for so restricting the doctrine has been the concern to avoid delay that is likely to be occasioned in moving litigation from the federal court to the state court. *See*, Harman v. Forssenius, *supra*; Griffin v. County School Board of Prince Edward County, 377 U.S. 218,

229, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). This is especially true where freedoms guaranteed by the First Amendment are involved and the delay normally inherent in transfer to the state court could result in the undue maintenance of an unconstitutional prohibition which has a "chilling effect" on the exercise of First Amendment rights. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). As *Dombrowski* illustrates, when abstention is rejected in civil rights cases, the reason generally is that the federal interest in deciding the federal issues may be so strong as to make delay intolerable.

We do not find this line of cases to be applicable in the present proceeding. Initially, we must note that the Supreme Court appears to be moving away from its restrictive approach to the abstention doctrine embodied in the above cases and may now believe that abstention is appropriate in a greater variety of cases. *See, e. g.*, Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). In any event, this proceeding, even if considered under the restrictive approach to the abstention doctrine, does not present the overriding federal interest involved in those cases wherein potential prejudice to a sensitive and fundamental constitutional right makes any delay intolerable. We conclude, therefore, that abstention is appropriate as to both the plaintiffs' claims of facial unconstitutionality of the divorce laws of Illinois and their allegedly discriminatory application.

With respect to the latter, the allegedly unequal application of impartial state laws by members of the state judiciary in formal judicial proceedings, we have previously held that the plaintiffs have sued improper defendants. But even if the proper parties had been named as defendants, and these claims were considered viable, we would nevertheless apply the doctrine of abstention and refrain from reaching them on the merits.

This aspect of the complaint calls into question the formal workings of the state judiciary. We can think of no other subject where abstention would be more appropriate than this sensitive area of federal-state relationships. The plaintiffs in effect ask this federal court to "look over the shoulder" of our state counterparts notwithstanding that these identical contentions could be first raised in many forms of state proceedings by any aggrieved person, as on appeal from an adverse divorce decree, by a declaratory judgment action, etc.

■ The doctrine of comity envisions a healthy respect for the dual relationship of sovereigns existing under our form of government. Numerous circumstances have occurred in past litigation which have caused federal courts, out of respect for the doctrine of comity, to refrain from exercising their otherwise proper jurisdiction in order to avoid needless conflict with the administration by a state of its own affairs. Thus, the Supreme Court has held that a federal court should have dismissed the complaint in a case involving proration orders in Texas oil fields on the ground that the issues involved a specialized aspect of a complicated regulatory system of local law, which should be left, ultimately, to the state courts to resolve. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Likewise, a federal court will not interfere with the collection of state taxes, Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); *cf.*, Detroit Edison Co. v. East China Township School District, No. 3, 378 F.2d 225 (6th Cir. 1967), cert. denied, 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284, or with other local regulatory systems. Alabama Public Service Commission v. Southern Railway Co., 341

U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); Duggins v. Hunt, 323 F.2d 746 (10th Cir. 1963); *but, cf.*, County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). Federal courts likewise will refuse to interfere, absent highly unusual circumstances, with the state's enforcement of its criminal laws, even when federal claims involving sensitive, fundamental constitutional rights are involved. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The lesson to be derived from these cases is that the inner workings of the state administrative and judicial processes should not be intruded upon by the federal courts prior to an attempted state resolution so long as the aggrieved persons have some presently available opportunity to raise these contentions in a state forum.

The rationale behind this doctrine as applied to contested administrative proceedings becomes even more controlling and relevant when the challenged state process is the functioning of the state judiciary itself. It is apparent to us that under this doctrine the claim that constitutional deprivations are being occasioned at the hands of state judicial officers should be first presented to a state forum for resolution. This conclusion does not suggest that the federal courts will indefinitely countenance any deprivation of constitutional rights under color of state law but only that the assertion of these deprivations should, as in this case, be heard in federal courts only after presentation to the state courts.

Accordingly, we decline to exercise our jurisdiction. An order will enter dismissing plaintiffs' complaint.