## No. 25088

**North Kiowa-Bijou Management District v. Ground Water Commission of the State of Colorado v. The First National Bank of Garland, Texas, Executor, Estate of Winton Jackson, Deceased**

(505 P.2d 377)

Decided January 22, 1973.

314

George A. Epperson, Donald F. McClary, Stanley I. Rosener, for petitioner-appellee.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Ben L. Wright, Jr., Special Assistant, for respondent-appellee.

Maley and Schiff, John Maley, for intervenor-appellant.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Winton Jackson entered into a contract to acquire certain lands in Adams County situated within the boundaries of the North Kiowa-Bijou Management District (hereinafter referred to as District), and formed pursuant to the Colorado Ground Water Management Act, 1965 Perm. Supp., C.R.S. 1963, 148-18-1 *et seq.* Jackson proposed to export ground water from irrigation wells on this land to users in the Denver Metropolitan area, outside of the designated ground water basin and outside of the District. Jackson filed with the

District a request for permission to export the water, the amount of water to be limited to the amount Jackson was entitled to consumptively use under the laws of appropriation. A hearing was held before the Board of Directors of the District on May 7, 1969, and the Board entered an order denying Jackson the right to export any water outside the boundaries of the District.

Jackson filed an objection to this decision with the Ground Water Commission (hereinafter referred to as the Commission). The District subsequently filed a motion with the Commission to dismiss the objection on the ground that the Commission had no jurisdiction to entertain the objection. Following oral argument on this issue, the Commission held that it had jurisdiction and ordered a *de novo* hearing on Jackson's right to export water. Prior to this proposed hearing, on November 28, 1969, the District obtained an order in certiorari from the Morgan County District Court ordering the Commission to certify its record to the District Court and staying further proceedings before the Commission. Following a denial of a writ of prohibition by this Court regarding this action, Jackson was allowed to intervene in the District Court action between the District and the Commission. The Morgan County District Court found that the Commission did not have jurisdiction to review the District's findings; the court permanently stayed further proceedings by the Commission in the matter. Subsequent to the District Court's denial of a motion to amend the court's order, Jackson timely filed an appeal to the Colorado Court of Appeals. Due to the nature of the alleged constitutional right to export water raised by Jackson, the appeal was transferred to the Colorado Supreme Court.

The Commission itself advises us in its brief that it now agrees with the holding of the trial court and states that it now admits it was in error in attempting to take jurisdiction of Jackson's appeal from the order of the District.

Jackson, however, persists in his position and contends here that (1) at the time of this action, the Commission had jurisdiction to review the District's order denying him the

right to export water; (2) Jackson's right to export water beyond the boundaries of the District is constitutionally protected; (3) the Adams County District Court was the proper forum for appeal in certiorari rather than the Morgan County District Court, and (4) the question of jurisdiction should be determined with respect to the provisions of the Colorado Ground Water Management Act and not the Colorado Administrative Code, C.R.S. 1963, 3-16-1 *et seq.* We affirm the judgment of the trial court.

I.

As a threshold matter, we first consider Jackson's last contention, namely, that the jurisdictional question should be determined with reference to the Colorado Ground Water Management Act rather than the provisions of the Administrative Code. We agree. As specifically provided in 1969 Perm. Supp., C.R.S. 1963, 3-16-6, of the Administrative Code, and as acknowledged by both the Management District and the Water Commission in their briefs, the Code has no applicability where a specific statutory provision relating to a specific agency provides a scheme for the administrative control of that agency. Such is the situation with the Ground Water Management Act (hereinafter referred to as "the Act"), which contains a comprehensive scheme for administering the provisions of that article.

II.

We move then to an examination of the provisions of the Act and the facts applicable here in order to determine the proper forum for the appeal from the District's order in this case.

In 1965, the Colorado legislature passed the Act in an attempt to permit the full development of ground water sources and alleviate the growing friction between surface water appropriators and well owners. 1965 Perm. Supp., C.R.S. 1963, 148-18-1. The Act separates certain water which it terms as "designated ground water" from the system of appropriation for surface water systems, and it creates a permit system for the allocation and use of ground waters within designated ground water basins. 1965 Perm. Supp.,

C.R.S. 1963, 148-18-1 to 148-18-38. Appropriators of the designated ground waters are required to obtain a permit for their appropriations and the Act establishes a system of prior appropriation, similar in operation to the system regulating surface water rights, to regulate the water rights of the ground water users. 1965 Perm. Supp., C.R.S. 1963, 148-18-6 to 148-18-8.

By the terms of the Act, its administration and enforcement are placed in the Ground Water Commission, the State Engineer, and locally formed ground water management districts. As provided by the Act, the Ground Water Commission, composed of twelve voting members, possesses the authority to create "designated ground water basins." 1965 Perm. Supp., C.R.S. 1963, 148-18-5. Once a basin is so designated, the Act gives taxpaying electors in the designated area the right to create ground water management districts within the basin. Any district thus formed, if approved by the Commission, is a governmental subdivision of the State of Colorado, and a corporate body with the powers of a public or quasi-municipal corporation. 1965 Perm. Supp., C.R.S. 1963, 148-18-17. The Act further provides that the District, along with its powers to enforce Commission regulations, has general authority to regulate the use, control and conservation of ground waters within the district. To accomplish these purposes, the district board of directors has the power to impose upon water users within the district certain rules and regulations, subject to the approval of the Commission if timely objection is filed to such a rule by a water user within the district; among others, the district possesses the power to promulgate regulations relating to the limitation upon exportation of ground waters outside of the district, where such use "materially affects the rights acquired by permit by any owner or operator of land within said district." 1965 Perm. Supp., C.R.S. 1963, 148-18-29(2)(g).

In 1966, the Kiowa-Bijou Creek drainage was determined by the Commission to be a "designated ground water basin." The taxpaying electors within the basin subsequently created the North Kiowa-Bijou Management District which was

approved by the Commission. In pursuance of its general regulatory powers, the District adopted several regulations, one of which stated:

"11. The District shall prohibit, after affording an opportunity for hearing before the Board of the District and presentation of evidence, the use of ground water outside of the boundaries of the District, where such use materially affects the rights acquired by permit by any owner or operator of land within the District."

Following the required publication, no objection was filed with the District with respect to this regulation.

Subsequently, Jackson filed with the District his request to export water beyond the boundaries of the District. Following a full and formal hearing before the Board of the District, his request was denied. Jackson contends that the Ground Water Commission had the jurisdiction to review such a determination; he claims that the action of the Morgan County District Court denying such jurisdiction clearly usurped the statutory structure for administrative review of such an order. To support this thesis, Jackson relies on several provisions of the Act, namely:

"148-18-29. *Management districts — board of directors.* (2)(a). The district board shall have the authority to regulate the use, control, and conservation of the ground water of the district by any one or more of the following methods, provided that the proposed controls, regulations, or conservation measures shall be subject to review and final approval by the ground water commission if objection is made in accordance with section 148-18-30.

"148-18-30. *Management district — board of directors — control measure — hearing — notice — publication — order.* Whenever the board of directors shall determine that control measures are necessary in order to ensure the proper conservation of ground water within the district, it shall confer with the ground water commission and ground water users within the district. No control measures shall be instituted until after a public hearing. Notice of such hearing shall be published. Such notice shall state the time and place

of the hearing and in general terms the corrective measure or measures proposed. Within thirty days after such hearing, the board shall announce the measure or measures ordered to be taken and shall cause notice thereof to be published, provided, that the ground water commission may review any measure or measures ordered by the board when an objection thereto is made to said commission by an affected party or parties within thirty days after publication of the corrective measures. Notice of such measure or measures shall also be sent to all known ground water users throughout such district by either certified or registered mail. The board shall have authority to compel compliance with such measure or measures by an action brought in the district court of the county in which any failure to comply is found to exist."

■ Jackson contends that these orders, taken together, necessarily vest jurisdiction in the Commission to review all control actions taken by the District. However, when considered in its entirety, the structure of the Ground Water Management Act reveals that this interpretation is not consistent with the legislative intent of the Act. The review provisions in Sections 148-18-29 and 148-18-30 of the Act apply only to review by the Commission of the promulgation and adoption by the local districts of proposed regulations and control measures applicable generally to water users in the district; the review provisions do not speak to individual actions taken by the district concerning interpretation, enforcement or compliance with duly adopted district rules or control measures.

Several factors predicate this determination of legislative intent. Initially, it should be noted that the last sentence of Section 148-18-30 states that the district's authority to compel compliance with control measures which it has duly promulgated rests with the district court where any failure to comply is found to exist. Such a method of enforcement is distinct from the statutory scheme prescribed for reviewing the *validity* of any District regulation. In this instance, the validity of the regulation is not in issue; Jackson contends only that the action taken by the District pursuant to this

regulation, denying his particular petition, is invalid. Jurisdiction to review such a specific determination, going to the execution and enforcement of the District's control measure, is vested in the appropriate district court.

Secondly, Section 148-18-30 of the Act provides that following the pronouncement of any control measure, the district is required to send notice of such measures to every known ground water user in the district by registered or certified mail. Requiring that every user of ground water in a district be sent registered notice of every decision by the district pertaining to specific individuals would surely be a strained construction of legislative intent. Such notice requirement is obviously intended as a method of notifying water users of general control measures which the district proposes to adopt. Thus, the provisions for review of "control measures" alluded to in Sections 148-18-29 and 148-18-30 refer to general district regulations and not individual decisions made within the ambit of such control measures.

Lastly, such a statutory construction of the 1963 Act is buttressed by the 1971 amendment to Section 148-18-30. Although inapplicable to the case in point, this amendment is consistent with our interpretation of the 1965 statute. To clarify the method of reviewing actions of a district board, the amendment, 1971 Perm. Supp., C.R.S. 1963, 148-18-30, provides in pertinent part:

"* * * Any person aggrieved by an act of the District board shall have the right to be heard by the board. If said person is dissatisfied with the decision of the board, he may appeal the same to a court of competent jurisdiction within thirty days of the decision."

We hold that the district court wherein Jackson's wells were located, rather than the Commission, had jurisdiction to review the action of the Management District.

III.

Jackson next contends that the question of jurisdiction in this case is governed by principles of *res judicata* arising out of *Jackson v. Colorado,* 294 F.Supp. 1065. In that

case, Jackson had invoked jurisdiction of a three judge federal panel to determine the constitutionality of a control measure which the District had previously adopted (and has since modified), which stated:

"It is prohibited to use or transport groundwater obtained within the District outside the boundaries of the District."

The federal court there held that Jackson's challenge was premature as he had failed to exhaust his administrative remedies; specifically, judicial relief could not be given until Jackson had invoked the review procedures under 1965 Perm. Supp., C.R.S. 1963, 148-18-29 and 148-18-30. As Jackson had filed timely objection, the Water Commission was required to review the control measure before jurisdiction of the courts could be invoked.

However, the federal court decision has no bearing under the issues raised here and the case is not applicable in this instance. There, the federal court was considering the jurisdiction of the Commission to review the validity of the District's control measure; here, however, we are concerned with the execution of a duly promulgated control measure with respect to a particular individual. As previously discussed, the Commission's jurisdiction did not extend to this type of review. Therefore, principles of *res judicata* arising from the Jackson decision are not dispositive of the issue in this case.

### IV.

Jackson also contends that his right to export water beyond the boundaries of the District is constitutionally protected. However, this issue is not before the Court in this appeal. As previously discussed, this case arose on an appeal from a decision of the Morgan County District Court regarding a Petition for Writ of Certiorari from the District Court to the Water Commission. The only issue regarding the Petition for Certiorari, and the only issue presented for determination on appeal, is whether the Commission had exceeded its jurisdiction in its determination to grant *de novo* review of the District's findings. As stated in C.R.C.P. 106(a)(4), upon the grant of a petition under Rule 106:

"Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion."

This rule has been reaffirmed by this Court on numerous occasions. See *Hawkins v. Hunt.* 113 Colo. 468, 160 P.2d 357; *People v. District Court,* 72 Colo. 525, 211 P. 626. Therefore, the issues of the constitutionality of the District's control measure, which Jackson attempted to interject into the case after being allowed to intervene, has not been presented in a manner proper for this Court's determination.

### V.

██ Lastly, Jackson contends that the Adams County District Court was the proper forum for the judicial appeal in this case, rather than the Morgan County District Court. As stated in 1965 Perm. Supp., C.R.S. 1963, 148-18-14, appeals from actions of the Water Commission should be taken to the court of the county wherein the water rights or wells are situated. Therefore, Jackson contends, the original appeal should have been commenced in Adams County, where the wells were located. However, the original parties to this action, the Water Commission and the Management District, consented to a change of venue to the District Court of Morgan County. As a subsequent intervenor, Jackson must abide with this change of venue. The appeal in Morgan County was proper.

In summary, we determine that the Morgan County District Court was correct in its determination that the Commission did not have jurisdiction to review the District's order. Therefore, Jackson's administrative remedies have been exhausted, and he may now appeal the District's determination to the District Court of Adams County. As his original method of proceeding was reasonable, he shall not be barred from seeking review of the order complained of by the thirty day limitation of the 1971 Amendment, 1971 Perm. Supp., C.R.S. 1963, 148-18-30. He shall be given thirty days from the date of this decision to prosecute an application for review.

The judgment is affirmed.

MR. JUSTICE GROVES dissents.

MR. JUSTICE GROVES dissenting:
I respectfully dissent as to point II. As I interpret 1965 Perm. Supp., C.R.S. 1963, 148-18-29(2)(g), prior to the amendment in 1971 Perm. Supp., C.R.S. 1963, 148-18-30, initial review should have been by the Ground Water Commission.